CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/24/2022

JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOY J.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:21-cv-00026 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT & RECOMMENDATION**

Plaintiff Joy J. ("Joy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Joy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess her allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 15) and **DENYING** Joy's Motion for Summary Judgment (Dkt. 11).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Joy failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Joy initially filed for DIB benefits on April 30, 2015 alleging disability beginning on January 7, 2015 because of obesity and costal margin tenderness and spasm. R. 77. An ALJ denied Joy's claim on February 7, 2018. R. 87. Joy filed a second claim for DIB on July 25, 2019, claiming her disability began on February 3, 2018, due to anxiety, depression, irritable bowel syndrome, headaches, hiatal hernia, kidney stones, bilateral carpel tunnel in both hands, severe nausea, degenerative disc/back pain, scoliosis, nerve damage from gall bladder surgery, weakness in both legs, and sciatica. R. 15, 192. Joy's date last insured ("DLI") was December 31, 2019; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 17; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Joy's applications at the

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

initial and reconsideration levels of administrative review. R. 94–105, 109–23. On October 21, 2020, ALJ Nicolas Foster held a hearing to consider Joy's claims for DIB. R. 55–71. Counsel represented Joy at the hearing, which included testimony from vocational expert Mitchell Schmidt. On November 25, 2020, the ALJ entered his decision analyzing Joy's claims under the familiar five-step process[3] and denied her claim for benefits. R. 15–30.

The ALJ found that Joy was insured at the time of the alleged disability onset and that she did not engage in substantial gainful activity during the period from her alleged onset date of February 3, 2018 through her DLI. R. 18. The ALJ found that Joy suffered from the severe impairments of multiple sclerosis, a spine disorder, scoliosis, slipping rib syndrome, obesity, irritable bowel syndrome, and chronic headache. Id. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21. The ALJ found that Joy's depression and anxiety were not severe mental impairments, and Joy had no limitation in understanding, remembering, or applying information and mild limitations with the domains of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 19–20.

The ALJ concluded that Joy retained the RFC to perform a limited range of light work except she could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She could never climb ladders, ropes or scaffolds. Joy could have no exposure to hazards, such as

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

unprotected heights and moving mechanical parts. She can frequently perform tasks requiring no more than monocular vision. She required ready access to a restroom, such as that found in a typical office setting. She required no more than a moderate noise intensity level as defined in the DOT/SCO. She could have no exposure to flashing lights. She required an overall light intensity level no more than that found in a typical office setting. She could understand, remember, and carry out simple instructions and make simple work-related decisions. She could work at a consistent pace throughout the workday, but not at a production rate pace where tasks had to be performed quickly. R. 21–22.

The ALJ determined that Joy cannot perform her past relevant work, but she could perform jobs that exist in significant numbers in the national economy, such as a price marker, collator operator, and housekeeping cleaner. R. 28–29. Thus, the ALJ determined that Joy was not disabled. R. 29–30. Joy appealed the ALJ's decision, and the Appeals Council denied her request for review on October 22, 2020. R. 1–4.

## ANALYSIS

### A. Medical History Overview

1. Medical Treatment

Joy fell in the shower and went to Ortho Virginia on February 19, 2018, with complaints of lower back pain, right knee pain, and right foot pain. R. 1057. Richard Miller, M.D. found that Joy's physical examination showed tenderness of the lower spine extending into the right sciatic notch and some minimal pain of the right knee, ankle, and foot. Id. She had 60 percent of normal range of motion of her lumbar sacral spine in all planes, no marked sensory loss, intact motor testing of the lower extremities, full knee flexion and extension, and full range of motion of the

4

ankle and foot in all planes with minimal discomfort. Id. Dr. Miller prescribed medication and recommended physical therapy and home exercises for her lumbar spine. R. 1058.

From 2018 to 2019, Joy had pain treatment visits with Cherish Van Schaik, F.N.P. During her examinations, Joy had a steady gait, full muscle strength, normal muscle tone, and normal sensation and showed no evidence of extremity joint instability. R. 791, 794, 797, 800, 803, 807, 810, 817, 821, 830. Joy also had normal mental findings such as being alert, a congruent mood, euthymic affect, intact memory, and intact judgment and insight. Id. Ms. Van Schaik continuously noted that Joy could rise from chair, walk effortlessly, but did show evidence of spinal malignment during her February and April 2018 visits (R. 791, 797). R. 800, 803, 807, 810, 817, 821, 824, 827, 830. At her July 2018 visit, Joy was slow to lie supine and sit up due to her chronic back and neck pain. R. 814. Joy had a broad-based gait and spinous process tenderness at her July 2019 visit. R. 849.

In February 2019, Dr. Miller referred Joy to Sharon Clark, N.P., for a pain evaluation due to her lower back pain and left hip pain. R. 692. At her initial visit with Ms. Clark on February 11, 2019, Joy reported worsening lower back pain and hip pain that radiated into both legs, but also stated that she did not need help with activities of daily living. R. 692–93. Although Joy had generalized lumbar spine tenderness, she had normal symmetric gait and station, normal lumbar spine stability with no significant muscle atrophy, normal range of motion, and normal hip strength and tone with some pain on range of motion testing. R. 695–96. Joy's coordination testing was normal, except she could not perform heel-knee-shin testing due to her pain. R. 697. Ms. Clark found that Joy had low back pain, lumbar spondylosis, and radiculopathy of the lumbosacral region. Id.

5

During her March to June 2019 visits with Ms. Clark, Joy complained of constant radiating low back pain located in her abdomen. R. 671, 676, 681, 687. Joy reported having sixty percent improved function on pain medication and denied any side effects. R. 672, 677, 682. In March 2019, Joy reported having anxiety but said that she could concentrate. R. 689. Ms. Clark noted that Joy was consistently oriented, pleasant, and cooperative with normal eye contact. R. 673, 678, 683, 689, 691. Ms. Clark continued Joy's pain medications. R. 674, 679, 684.

Joy saw John Lackey, D.O., on October 14, 2019 for double vision problems that stopped by the time of her appointment. R. 1135. Dr. Lackey reviewed Joy's brain MRI and determined that she had brain lesions suggestive of multiple sclerosis. R. 1137, 1344. Dr. Lackey advised Joy to give a copy of the MRI report to Ms. Van Schaik so that Joy can be referred to a neurologist. R. 1137. After her DLI, Joy had a consultation with Suma Shah, M.D. on January 2, 2020, about her abnormal brain MRI from her October 2019 visit with Dr. Lackey. R. 1286–87. Dr. Shah found that Joy had left-sided face weakness and left-sided reduced facial sensation, diffusely reduced strength secondary to pain, diminished sensation to temperature in the left upper and left lower extremity, diminished sensation to vibration on the right upper extremity, and wide-based and cautious gait. R. 1286. Dr. Shah could not definitively diagnose multiple sclerosis without additional testing and reviewing recent imaging. R. 1287. At her follow-up visit on March 9, 2020 with Dr. Shah, Joy denied any neurological symptoms and reported her double vision problems did not reoccur. R. 1487. Dr. Shah noted the same physical examination findings as the prior January 2020 visit. Id. After reviewing her MRI, Dr. Shah diagnosed Joy with highly active multiple sclerosis and recommended she undergo disease modifying therapy. R. 1487, 1491.

2. Medical Opinion Evidence

State agency psychological consultants Jo McClain, Psy.D. and Stephen P. Saxby, Ph.D. reviewed Joy's records and determined that Joy did not have any severe mental impairment. R. 99–100, 116–18. The ALJ found that these opinions were persuasive as they were consistent with the evidence of record, such as the lack of evidence of ongoing outpatient treatment from a mental health professional and mostly unremarkable mental status examination findings. R. 26.

On June 16, 2016, Dr. Miller found that due to Joy's chronic abdominal pain and medications, she was unable to perform work of any kind and should be considered for total disability. R. 347. The ALJ did not find Dr. Miller's opinion persuasive as it was remote in time to the relevant period and is conclusory on issues reserved to the Commissioner of Social Security. R. 26.

On April 12, 2018, Ms. Van Schaik found that Joy had chronic abdominal pain, her impairments interfered with the attention and concentration required to perform simple work, and she had medication side effects of drowsiness, dizziness, and constant nausea. R. 1076. Ms. Van Schaik also noted that Joy's impairments do not permit her to walk more than ten minutes without rest, she cannot lift anything greater than ten pounds, she cannot stand for more than fifteen minutes at a time, and she cannot sit for more than thirty minutes at a time without having to get up and move around. Id. Ms. Van Schaik found that Joy's severe physical impairments rendered her completely unable to perform any kind of work and she should be considered for total disability. Id. The ALJ did not find the opinion persuasive as Ms. Van Schaik's proposed limitations were not consistent with the evidence, such as her own examination findings. R. 26–27.

On December 9, 2019, state agency medical consultant Wyatt S. Beasley III, M.D. reviewed Joy's records and determined that Joy could occasionally lift and/or carry twenty

7

pounds, frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for a total of more than six hours in an eight-hour workday; could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; would need to avoid concentrated exposure to extreme cold and vibration; and avoid even moderate exposure to hazards. R. 102–04. Similarly on reconsideration, state agency expert William Rutherford, M.D., also found that Joy could perform light exertional work with postural and environmental limitations. R. 120–21. The ALJ found Drs. Beasley and Rutherford's opinions partially persuasive as the evidence of record did not support limiting Joy's exposure to extreme cold and that the record warranted greater postural limitations in the RFC. R. 27.

The ALJ reviewed ALJ Mark O' Hara's opinion on February 7, 2018 from Joy's prior disability claim, and found it partially persuasive and gave it some weight. R. 27, 75–87. The ALJ determined in 2018 that Joy's obesity and slipping rib syndrome were severe impairments and her other conditions, such as degenerative disc disease and migraines, were non-severe impairments. R. 77. The evidence since the 2018 denial of benefits, including the MRI of Joy's lumbar spine, complaints of abdominal pain, and treatment notes showing an assessment of brain lesions suggestive of multiple sclerosis, supported the ALJ's finding of additional severe impairments of multiple sclerosis, a spine disorder, scoliosis, irritable bowel syndrome, and chronic headache, in addition to slipping rib syndrome and obesity, and the additional limitations in the RFC. R. 27.

### B. Subjective Allegations

The ALJ considered Joy's subjective testimony in the RFC analysis, and determined that her alleged limitations were not fully supported by the record. Joy argues that the ALJ failed to explain how the evidence the ALJ cited establishes that Joy's allegations are not fully supported.

Pl.'s Br. at 14–15, Dkt. 12. Joy also argues that the ALJ failed to address the findings, statements, and complete diagnoses contained in the record after her DLI. Id. at 11–14. Joy does not identify any subjective complaints that the ALJ failed to consider. Rather, Joy asks this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based

9

on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Contrary to Joy's argument, the ALJ's opinion includes a detailed discussion of Joy's medical history, including her subjective allegations, and the ALJ adequately supported his findings that Joy's allegations were not entirely consistent with the medical evidence and other evidence in the record. R. 23. The ALJ acknowledged and considered Joy's testimony alleging that she has frequent severe headaches lasting up to two days resulting in difficulty concentrating, irritable bowel syndrome flare ups, double vision, an inability to stand for more than thirty minutes, the need to lie down at least three times for thirty minutes, an inability to lift a gallon of milk, an inability to focus for more than twenty minutes, chronic left back pain, sleepiness and agitation from her narcotic pain medication, and must use a cane. R. 22.

The ALJ addressed the objective medical evidence in the record demonstrating that Joy's allegations were not entirely credible. R. 23. The ALJ noted that evidence in the record does not show complaints of migraines or headaches at the frequency and severity alleged by Joy nor indicate disabling medication side effects. Id. The ALJ also noted that most of Joy's examinations stated that she was alert and oriented. Id. Regarding her irritable bowel syndrome, the ALJ explained that the evidence of record does not establish the frequency of irritable bowel syndrome attacks alleged by Joy, and that he accommodated her allegations in the RFC with a limitation of ready access to a restroom. Id. The ALJ also explained that Joy's physical examinations showed a normal gait and station, no significant strength deficits, and no assistive device required to walk. Id. The ALJ noted that the record indicates reports of abdominal pain, but does not show any significant deficits in Joy's alertness or memory. Id. The ALJ also noted that many of Joy's complaints, such as double vision and urinary issues, resolved. Id. Thus, the

ALJ's opinion includes the necessary logical bridge between Joy's subjective complaints and impairments and the accommodations in the RFC. Id.

The ALJ properly addressed Joy's reported daily activities of washing dishes, starting laundry, taking a shower, putting clothes in the dryer, putting clothes in a basket, taking a nap, preparing dinner, and folding clothes after her son carried the basket to the sofa, as a factor in his assessment of her subjective allegations. R. 20. The ALJ determined that Joy was largely independent with her activities of daily living. R. 23. Thus, the ALJ concluded that Joy "has the above residual functional capacity assessment, which is supported by the evidence of record, such as evidence of obesity, physical examination findings, imaging records of the claimant's spine, the claimant's complaints of pain and prescribed narcotic pain medications, and the claimant's activities noted in her function report at Exhibit 3E." R. 28.

Joy also argues that the ALJ failed to follow the requirements in Bird v. Comm'r by omitting an analysis of the medical records from Duke Health Neurology after her DLI. 669 F.3d 337, 340 (4th Cir. 2012). Joy's DLI was December 31, 2019. R. 17, 94. Specifically, Joy points to post-DLI medical records on January 2, 2020 and March 9, 2020, in which Dr. Shah diagnosed Joy with multiple sclerosis and noted that she had neurological abnormalities. R. 1283–87, 1485–1507. Joy's argument is meritless because the ALJ properly found that her pre-DLI medical records showed that her multiple sclerosis condition was a severe impairment requiring work limitations in the RFC.

The Fourth Circuit held in Bird v. Comm'r that opinions made after a claimant's DLI "are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's [DLI]." 699 F.3d 337, 340 (4th Cir. 2012) (citing Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987)). The Fourth Circuit specifically held that post-DLI

11

evidence is admissible when there is "an inference of linkage with claimant's pre-[DLI] condition." Id. at 341; see also Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969) (retrospective consideration is appropriate when "the record is not so persuasive as to rule out any linkage" of the later complained of symptoms with her earlier symptoms). Conversely, post-DLI evidence is not relevant when it is "not linked in any manner to the claimant's condition before [her DLI]." Johnson v. Barnhart, 434 F.3d 650, 655–66 (4th Cir. 2005).

District courts have construed this principle somewhat narrowly, finding that the linkage between a pre- and post-DLI condition needs to be consistent—in other words, it cannot be "new evidence." See, e.g., Binnarr v. Colvin, 164 F. Supp. 3d 788, 792 (D.S.C. 2016) (finding that medical records demonstrating "a *consistent* linkage between Plaintiff's condition" pre- and post-DLI must be considered) (emphasis added).

Here, Bird is distinguishable from Joy's case. In Bird, the claimant applied for Social Security disability benefits in 2006 but was denied benefits because of the lack of medical evidence created before his DLI and the fact that the VA rating decision became effective fifteen months after his DLI. Bird, 699 F.3d at 340. In addition, Bird's testimony and that of his wife were consistent with the post-DLI medical evidence. Id. at 342. Here, there were medical records from the relevant period, cited, and summarized by the ALJ, indicating that Joy's impairments were not disabling, whereas in Bird, there were no records to support his allegations. 699 F.3d at 340; See Lisa G. v. Kijakazi, No. 7:20-CV-691, 2022 WL 868525, at *8 (W.D.Va. Mar. 22, 2022) (citing Engle v. Berryhill, No. 1:16CV398-FDW-DSC, 2017 WL 5492193, at *2 (W.D.N.C. Oct. 6, 2017). Further, Bird permits but does not require the ALJ to consider post-DLI records. Bird, 699 F.3d at 340.

12

The ALJ properly reviewed Joy's medical records and found her multiple sclerosis to be a severe physical impairment at step two. R. 20. At step four, the ALJ acknowledged Dr. Lackey's October 24, 2019 treatment notes suggesting that Joy had multiple sclerosis. R. 18, 26, 27, 28, 1137, 1344. The ALJ stated that Joy's impairments significantly limited her ability to perform basic work activities, "[f]or example, magnetic resonance imaging (MRI) on October 21, 2019 showed innumerable ring-enhancing lesions throughout the brain parenchyma bilaterally, many of which correlated with foci of decreased T1 signal (Exhibit B15F)." R. 18. Further, the ALJ detailed Joy's October 2019 visit with Dr. Lackey and explained that his treatments notes "gave an assessment of brain lesions suggestive of multiple sclerosis." R. 26. When evaluating medical opinion evidence, the ALJ noted that he considered Joy's impairment and allegations, including her multiple sclerosis medical evidence, and how they were accommodated in the RFC:

> "The undersigned considered evidence, such as the claimant's history of headaches and irritable bowel syndrome, the claimant's complaints of pain and treatment with narcotic pain medication, and *treatment notes of Dr. Lackey, dated October 24, 2019, showing that the claimant reported double vision that was gone by the time of this visit and had an MRI of her brain that showed multiple ring-shaped enhancing lesions*, in finding that the claimant would have frequently required tasks requiring no more than monocular vision, required ready access to a restroom, required no more than a moderate noise intensity level as defined in the DOT/SCO, could have no exposure to flashing lights, required an overall light intensity level no more than that found in a typical office setting, could understand, remember, and carry out simple instructions and make simple work-related decisions, and could work at a consistent pace throughout the workday, but not at a production rate pace where tasks had to be performed quickly."

R. 27 (emphasis added).

In fact, the ALJ found the prior ALJ's opinion on February 7, 2018 partially persuasive and gave it some weight because there was additional evidence since the 2018 decision, which warranted greater limitations in the RFC. R. 27–28. The ALJ stated that additional evidence "such as . . . Dr. Lackey's October 24, 2019 treatment notes showing an assessment of brain

13

lesions suggestive of multiple sclerosis, supports the undersigned's finding of severe impairments of multiple sclerosis… and the additional limitations in the residual functional capacity." Id. Dr. Shah's March 2020 diagnosis of Joy's multiple sclerosis confirmed Dr. Lackey's suspicions of Joy's multiple sclerosis at her October 2019 visit. R. 1487, 1491. At the March 2020 visit with Dr. Shah, Joy denied any neurological symptoms and reported that her double vision had not returned. R. 1487. Dr. Shah's notes that Joy had gait instability (R. 1487), are consistent with Ms. Van Schaik's notes that Joy's gait was mostly steady during her 2018 and 2019 visits (R. 791, 794, 797, 800, 803, 807, 810, 817, 821, 830) but was broad-based at her July 2019 visit (R. 849), which the ALJ considered (R. 24, 25, 26).

Accordingly, Joy failed to show that the ALJ's exclusion of Dr. Shah's post-DLI evidence was a harmful error or that her multiple sclerosis was a severe impairment which precluded work. Thus, the ALJ concluded that "[e]vidence of record during the period of February 3, 2018 to December 31, 2019 does not show symptoms or limitations at the severity alleged by the claimant or that would have precluded work activity within the residual functional capacity" and that "[e]vidence during the relevant period also does not show any significant strength deficits." R. 23.

The ALJ reviewed Joy's medical history and her subjective allegations in detail and found that Joy's statements regarding the severity of her limitations were not entirely credible because they were not fully supported by the objective medical evidence, the medical opinion evidence, her treatment history, or her daily activities. The ALJ was entitled to find that the objective medical evidence outweighed Joy's subjective statements, and he provided a sufficient rationale for doing so. A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective allegations and should not interfere with that assessment where the

14

evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Joy's subjective complaints with substantial evidence and that Joy can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Joy's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered:  August 24, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge