CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/20/2022
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOY NOEL J.,[1] <br><br> *Plaintiff,* <br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security[2] <br><br> *Defendant.* | CASE NO. 6:21CV00026 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

## I.   Introduction

This matter is before the Court on the Parties' cross motions for summary judgment. Dkts. 11, 15. Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to Magistrate Judge Robert S. Ballou for proposed findings of fact and a recommended disposition. In his Report and Recommendation ("R&R"), Judge Ballou determined that the Commissioner of Social Security ("Commissioner")'s final decision was supported by substantial evidence and advised this Court to (1) deny Joy's motion and (2) grant the Commissioner's motion. Dkt. 17 at 1. Joy timely filed her objections, Dkt. 18, obligating the Court to undertake a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(C); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). The Commissioner also filed a timely response to Joy's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

1

objections. Dkt. 19. The Court finds that Joy's objections are without merit and adopts Judge Ballou's Recommendations in full.

## II. Standard of Review

Objections to a magistrate judge's R&R under Federal Rule of Civil Procedure 72(b) "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). The district court must determine *de novo* any portion of the magistrate judge's R&R to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C); *Farmer*, 177 F. App'x at 330–31.

The Court must affirm the Administrative Law Judge ("ALJ")'s factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Bird v. Comm'r of Soc. Sec.*, 669 F.3d 337, 340 (4th Cir. 2012). Substantial evidence requires more than a mere scintilla of evidence, but less than a preponderance. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). The Court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ, *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012), and must defer to the ALJ's decision where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," *Johnson*, 434 F.3d at 653. However, a reviewing court should not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir.

2017). An ALJ must "build an accurate and logical bridge" from the evidence in the record to his conclusions. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the Court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971).

### III.    Background

#### A.  The ALJ Decision

Joy filed for disability insurance benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. §§ 401–433, on April 30, 2015. Record ("R.") 77. Her initial filing alleged disability beginning on January 7, 2015, due to obesity and causal margin tenderness and spasm. *Id.* An ALJ denied this claim on February 7, 2018. R. 87. On July 25, 2019, Joy filed a second claim for DIB. R. 192. She claimed that her disability began on February 3, 2019, due to anxiety, depression, irritable bowel syndrome, headaches, hiatal hernia, kidney stones, bilateral carpel tunnel in both hands, severe nausea, degenerative disc/back pain, scoliosis, nerve damage from gall bladder surgery, weakness in both legs, and sciatica. R. 192. Her date last insured ("DLI") was December 31, 2019. R. 17. Joy must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). At both the initial and reconsideration levels of administrative review, the state agency denied Joy's applications. R. 94–105, 109–23.

An ALJ held a hearing to consider Joy's claims for DIB on October 21, 2020. R. 55–71. Joy had counsel representation at the hearing, and a vocational expert provided testimony. *Id.* On November 25, 2020, the ALJ denied Joy's claims for benefits. R. 15–30. In making this decision, the ALJ worked through the standard five-step inquiry to determine if Joy was disabled by considering whether she (1) was engaged in substantial gainful activity ("SGA");[3] (2) had a severe medical impairment; (3) had an impairment listed or equivalent to one listed in the Act's regulations; (4) could return to her past relevant work based on her residual functional capacity ("RFC"); and, if she could not, (5) whether she could perform other work based on her RFC. 20 C.F.R. § 404.1520(a)(4); *see Lewis*, 858 F.3d at 861. "The burden of proof lies with the claimant during the first four steps but shifts to the Commissioner at step [five]." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020) (citing *Lewis*, 858 F.3d at 861).

The ALJ found that, at the time of the alleged disability onset, Joy was insured. R. 18. She did not engage in SGA from her alleged onset date of February 3, 2018 through her DLI. *Id.* The ALJ found that she suffered from the severe impairments of multiple sclerosis, a spine disorder, scoliosis, slipping rib syndrome, obesity, irritable bowel syndrome, and chronic headache. *Id.* Per the ALJ, these impairments did not meet or medically equal a listed impairment, either individually or in combination. R. 21. Nor did her depression and anxiety constitute severe mental impairments. R. 19. And she had no limitation for understanding, remembering, or applying information; mild limitation in interacting with others; and mild limitation in adapting or managing oneself. R. 20.

---

[3] "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not, a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).

4

Based on the record, the ALJ concluded that Joy retained the RFC to perform light work, except she could occasionally stoop, kneel, crouch, crawl, and climb ramps. R. 21. She could never climb ladders, ropes, or scaffolds. *Id.* Further, she could have no exposure to hazards, like unprotected heights and moving mechanical parts. *Id.* Joy would have commonly needed tasks requiring no more than monocular vision. *Id.* And she required ready access to a bathroom, such as that typically found in an office setting. *Id.* She required no more than a moderate noise intensity level, based on the DOT/SCO definition for such a level. *Id.* She could not have exposure to flashing lights. *Id.* She required an overall light intensity level no more than that which is found in a typical office setting. *Id.* She could understand, remember, and carry out simple instructions and simple work-related decisions. *Id.* She could work at a consistent pace throughout the workday. R. 21–22. But she could not work at a production rate pace where tasks had to be performed quickly. R. 22.

The ALJ concluded by determining that Joy cannot perform her past relevant work, but she could perform jobs that exist in significant numbers in the national economy. R. 28. Such jobs include price marker, collator operator, and household cleaner. R. 29. The ALJ thus determined that Joy was not disabled. R. 29–30

Joy appealed the ALJ's decision, and on October 22, 2020, the Appeals Council denied her request for review. R. 1–4.

### B. The R&R

In the R&R addressing the Parties' cross motions for summary judgment, Dkts. 11, 15, the magistrate judge determined that the ALJ's final decision was supported by substantial evidence. Dkt. 17. The magistrate judge considered Joy's challenges to the ALJ's determination that Joy's alleged limitations were not fully supported. *Id.* at 8–15. The magistrate judge found

substantial evidence to support the ALJ's conclusion that her allegations were not fully supported. *See id.*

### C. Medical History Overview

#### i. Medical Treatment Evidence

From 2018 to 2019, Joy met with Cherish Van Schaik, F.N.P., for pain treatment visits. *See, e.g.*, R. 791, 794, 797, 800, 803, 808, 811, 830, 833, 836, 840, 845. Initially, these examinations showed Joy having a steady gait, full muscle strength, normal muscle tone, normal sensation, and no evidence of extremity joint instability. R. 791, 794, 797, 800, 803, 807, 810, 830, 833, 836, 840. They also showed Joy having normal mental findings, including alertness, a congruent mood, euthymic affect, intact memory, intact judgment, and intact insight. *See id.* F.N.P. Van Schaik noted continuously that Joy could rise from a chair and walk effortlessly. R. 800, 803, 807, 810, 817, 821, 824, 827, 830, 836, 840. But at times, for example during a July 29, 2019 visit, F.N.P. Van Schaik found that Joy "ambulated with moderate effort with a broad-based gait" and "arose from the chair with moderate effort." R. 849. Also, during her February and April 2018 visits, Joy showed evidence of spinal malignment. R 791, 797. And at her July 2018 visit, Joy was slow to lie supine and sit up, because of pain. R. 814.

Joy went to OrthoVirginia on February 19, 2019, complaining of moderate pain in the low back that radiated to her right hip and lower extremity, right knee pain, and right foot pain. R. 1057. This pain emerged after she fell in the shower on February 18, 2019. *Id.* Richard Miller, M.D., oversaw her physical examination. *Id.* He determined that the examination showed tenderness of the lower lumbar spine extending to the PSIS bilaterally and the right sciatic notch and pain in her right knee, ankle, and foot. *Id.* He also found that she had 60% of normal range of motion in her lumbar sacral spine in all planes, full knee flexion and extension, no marked

6

sensory loss, intact motor and neurovascular testing for the lower extremities, and full range of motion of the ankle and foot in all planes with minimal discomfort. *Id.* Based on his findings, Dr. Miller prescribed medication and recommended a plan for Joy to begin physical therapy and home exercise for the lumbar spine. R. 1058.

Also in February 2019, Dr. Miller referred Joy to Sharon Clark, N.P., for a pain evaluation, due to her lower back and left and right hip pain. R. 692. On February 11, 2019, Joy had her initial visit with N.P. Clark. *Id.* Joy reported worsening pain in her lower back and hips, which radiated into both legs. R. 692–93. She also expressed that she did not need any help with daily activities, including ambulating, dressing, eating, hygiene/bathing, and toileting. R. 693. Joy had generalized lumbar spine tenderness, normal symmetric gait and station, normal lumbar spine stability without significant muscle atrophy, normal motion range, normal hip strength and tone, and some pain in the hip on range of motion testing. R. 695–96. She had normal coordination testing, though she could not perform the heel-knee-shin testing due to her pain. R. 697. N.P. Clark diagnosed Joy with low back pain, lumbar spondylosis, radiculopathy of the lumbosacral region, cervicalgia, long term (current) use of opiate analgesic, and adolescent idiopathic scoliosis of the lumbar region. *Id.*

From March to June 2019, during visits with N.P. Clark, Joy complained of continued lower back pain located in her abdomen, which radiates to both legs. R. 671, 676, 681, 687. She reported to N.P. Clark that her pain medication improved functioning by 60% and that she had no side effects from pain medications. R. 672, 677, 682. During a March 11, 2019 visit to N.P. Clark, Joy reported that she had anxiety but could still concentrate. R. 689. During these visits, N.P. Clark continued Joy's pain medications. R. 674, 679, 684. N.P. Clark also noted that Joy was pleasant and cooperative. R. 673, 678, 683, 689, 691.

Joy also saw John Lackey, D.O., on October 24, 2019, for double vision problems. R. 1135. These problems stopped before the time of her appointment. *Id.* Dr. Lackey reviewed Joy's brain MRI and diagnosed her with brain lesion suggestive of multiple sclerosis. R. 1137. He advised Joy to give her MRI report to her PCP to be referred to neurology/neurosurgery for brain lesion evaluation. *Id.*

On January 2, 2020, Joy had a consultation with Suma Shah, M.D. about her abnormal brain MRI. R. 1286–87. Dr. Shah noted reduced facial sensation on the left side of her face, facial weakness on the left side of her face, slightly wider palpebral fissure and left nasolabial fold flattening on the left side of her face, diminished sensation to temperature in the upper and lower left extremities, diminished sensation to vibration on the right upper extremity, and a wide-based and cautious gait. R. 1286. But Dr. Shah noted that he did not have access to prior radiology reports, prior ophthalmology consultation reports, or imaging, so he could not definitively diagnose multiple sclerosis without additional testing and reviewing recent imaging. R. 1286–87.

Joy followed up with Dr. Shah on March 9, 2020 and denied any new neurologic symptoms. R. 1487. Dr. Shah's report also stated she had not had any recurrence of double vision findings. *Id.* And she continued to have gait instability and dysarthia. *Id.* Based on her MRI, Dr. Shah diagnosed Joy with multiple sclerosis, relapsing-remitting. R. 1491. Dr. Shah recommended she start disease modifying therapy. *Id.*

### ii.  Medical Opinion Evidence

Two state agency psychological consultants, Jo McClain, Psy.D. and Stephen P. Saxby, Ph.D., reviewed Joy's records, ultimately determining that she lacked any severe mental impairment. R. 99–100, 116–18. The ALJ considered these opinions, finding them persuasive

because they were consistent with the record's evidence during the relevant period, like lack of evidence of ongoing outpatient treatment from a mental health professional and mostly unremarkable mental status examination findings. R. 26.

Dr. Miller determined on June 16, 2016, that Joy should be considered for total disability, as, with her chronic abdominal pain and medications, she could not perform work of any kind. R. 347. But the ALJ did not find Dr. Miller's opinion persuasive. R. 26. The ALJ explained that this opinion,[4] which it mistakenly described as a June 2015 opinion, is unpersuasive because it is remote in time to the relevant period. *Id.* Also, it is conclusory on issues reserved to the Commissioner of Social Security. *Id.*

On April 12, 2018, F.N.P. Van Schaik determined that Joy had chronic abdominal pain, impairments severe enough to interfere with the attention and concentration required to perform simple work-related tasks constantly, and severe side-effects from the pain medications including drowsiness, dizziness, and constant nausea. R. 1076. F.N.P. Van Schaik also noted Joy had several functional limitations. *Id.* She could not walk longer than ten minutes without having to rest and having a significant increase in pain. *Id.* She could not lift anything greater than ten pounds. *Id.* She could not stand for longer than fifteen minutes at a time. *Id.* She could not sit for longer than thirty minutes at a time without needing to stand and move around. *Id.* F.N.P. Van Schaik determined that Joy could not perform work of any kind and should be considered for total disability. *Id.*

The ALJ found F.N.P. Van Schaik's opinion unpersuasive. R. 26–27. The ALJ explained that F.N.P. Van Schaik's determination that Joy was disabled and unable to work is a determination

---

[4] The ALJ mistakenly described the opinion as a June 2015 opinion. R. 26.

reserved to the Commissioner on Social Security. R. 27. Also, the limitations that F.N.P. Van Schaik described Joy as having were inconsistent with evidence during the relevant period. *Id.* For example, F.N.P. Van Schaik's examination of Joy on February 26, 2018, showed that Joy was in no apparent distress with 5/5 muscle strength, could maintain seated postural station, could arise from a chair effortlessly, could ambulate effortlessly with a steady gait, and showed no evidence of extremity joint instability. *Id.* Additionally, a review of symptoms in Dr. Tompkins' treatment notes from April 23, 2018 showed no reported fatigue or muscle weakness. *Id.*

State agency medical consultant Wyatt S. Beasley III, M.D. reviewed Joy's records on December 9, 2019. R. 101–07. Dr. Beasley determined that Joy could occasionally lift and/or carry twenty pounds; could frequently lift and/or carry ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; could push and/or pull in an unlimited manner; could frequently climb ramps/stairs; could never climb ladders/ropes/scaffolds; could frequently balance, kneel, crouch, and crawl; would need to avoid concentrated exposure to extreme cold; and would need to avoid even moderate exposure to hazards. R. 102–04. State agency expert William Rutherford, M.D., on reconsideration, similarly found that Joy could perform light exertional work with postural and environmental limitations. R. 120–21. The ALJ found Drs. Beasley and Rutherford's opinions partially persuasive. R. 27. The ALJ discussed that the record's evidence did not indicate support for limiting Joy's exposure to extreme cold. R. 27. Further, the ALJ noted that the record warranted greater postural limitations in the RFC, based on record evidence of obesity and imaging records of Joy's spine. *Id.*

The ALJ also reviewed the opinion of a different ALJ, who denied Joy's prior disability claim on February 7, 2018. R. 27, 75–87. The ALJ considering Joy's present disability claim found the prior opinion partially persuasive. R. 27. In 2018, the previous ALJ determined that Joy's obesity and slipping rib syndrome were severe impairments. R. 77. Her other conditions, including degenerative disc disease and migraines, were non-severe impairments. *Id.* The ALJ reviewing this previous opinion recognized that evidence since the earlier decision, such as MRI records of Joy's lumbar spine from March 5, 2018, her complaints of abdominal pain, and treatment notes showing an assessment of brain lesions suggestive of multiple sclerosis supported the ALJ in finding severe impairments of multiple sclerosis, a spine disorder, scoliosis, irritable bowel syndrome, and chronic headache, in addition to slipping rib syndrome obesity and the additional limitations in the RFC. R. 27–28.

### iii. **Subjective Allegations**

The ALJ also considered Joy's subjective testimony in his RFC analysis, determining that the record did not fully support her allegations. R. 23. The ALJ acknowledged Joy's testimony regarding her frequent headaches that last up to two days and result in difficulty concentrating, chronic back pain, irritable bowel syndrome flare ups, double vision, an inability to stand for longer than thirty minutes, an inability to sit for less than thirty minutes, an inability to lift a gallon of milk, a need to lie down at least three times for at least thirty minutes during an eight-hour work day, use of a cane to walk, memory loss, and sleepiness and agitation from her pain medication. R. 22. The ALJ noted that record evidence did not show symptoms or limitations at

the severity Joy alleged or that would have precluded work activity within the RFC. R. 23. And the ALJ cited record examples. *Id.*

The ALJ cited objective medical evidence in the record to demonstrate Joy's subjective allegations lacked full credibility. R. 23. The ALJ noted record evidence did not support migraines or headaches at the frequency and severity Joy alleged. *Id.* Most of her examinations indicated alert and oriented mentation. *Id.* The record evidence also did not establish the frequency of irritable bowel syndrome flare ups that Joy alleged. *Id.* Most record examinations showed Joy having a normal gait and station, and the record did not indicate that Joy required an assistive device for ambulation during the relevant period. *Id.* Further, record evidence during the relevant period did not show any significant strength deficits. *Id.* The record did indicate reports of abdominal pain. *Id.* It did not show any significant deficits in alertness or memory. *Id.* Many of Joy's complaints, such as double vision and urinary issues, resolved. *Id.*

## IV. Analysis

Joy objects to the R&R on the grounds that the ALJ failed to support his analysis of Plaintiff's subjective complaints with substantial evidence. Dkt. 18 at 1. She argues that "the ALJ clearly did not base the decision on the record as a whole, as very significant treating specialist records went unaddressed." *Id.* at 2. She bases this argument in the fact that the ALJ omitted an analysis of medical records from after her DLI.

The Fourth Circuit has recognized that opinions made after a claimant's DLI "may be relevant to prove a disability arising before the claimant's DLI." *Bird*, 699 F.3d at 340 (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). It has held that post-DLI evidence is

appropriate for retrospective consideration when "'reflective of a possible earlier and progressive degeneration.'" *Id.* at 341 (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). And post-DLI evidence is not relevant if "not linked in any manner to the claimant's condition before her DLI." *Id.* (citing *Johnson v. Barnhart*, 434 F.3d 640, 656, 656 n.8 (4th Cir. 2005)). Thus, district courts consider whether post-DLI medical records "demonstrate a consistent linkage between [claimant's] condition prior to the date last insured and [her post-DLI] condition." *Binnarr v. Colvin*, 164 F. Supp. 788, 792 (D.S.C. 2016).

Joy argues that post-DLI evidence from Dr. Shah, which the ALJ did not consider, supports her allegations and requires consideration by the ALJ. Dkt. 18 at 2. On January 2, 2020, Dr. Suma Shah conducted a neurologic examination, based on an abnormal MRI. R. 1286. Dr. Shah noted reduced facial sensation on the left side of her face, facial weakness on the left side of her face, slightly wider palpebral fissure and left nasolabial fold flattening on the left side of her face, diminished sensation to temperature in the upper and lower left extremities, diminished sensation to vibration on the right upper extremity, and a wide-based and cautious gait. R. 1286. But Dr. Shah also noted that he did not have access to prior radiology reports, prior ophthalmology consultation reports, or imaging, so he could not definitively diagnose multiple sclerosis without additional testing and reviewing recent imaging. R. 1286–87. Still, Joy argues that "[t]he findings of diffusely reduced strength, diminished sensations, and wide-based and cautious gait strongly support [her] allegations and require consideration by the ALJ." Dkt. 18 at 2.

Joy's objections do not include her follow-up with Dr. Shah on March 9, 2020. Dkt. 18. At that follow-up, she denied any new neurologic symptoms. R. 1487. Dr. Shah's report also stated she had not had any recurrence of double vision findings. *Id.* And she continued to have

gait instability and dysarthia. *Id.* Based on her MRI, Dr. Shah diagnosed Joy with multiple sclerosis, relapsing-remitting. R. 1491. Dr. Shah recommended she start disease modifying therapy. *Id.* But again, her objections regarding the need for the ALJ to consider post-DLI evidence include only the January 2, 2020 findings of Dr. Shah. Dkt. 18, which failed to provide a definitive diagnosis. R. 1286–87.

The Fourth Circuit has previously recognized that there is no merit to a claimant's argument that the ALJ failed to give proper weight to post-DLI evidence when the claimant "has made no argument that the disabilities contained in the [post-DLI evidence] existed continuously from [the DLI] to the present," and when "there is no objective medical evidence that the impairments observed [in the post-DLI evidence] existed prior to the [DLI]." *Johnson*, 434 F.3d at 656. The Fourth Circuit has also found, in *Bird*, that weighing post-DLI evidence "was required" when a claimant's testimony and that of his wife were consistent with the post-DLI evidence and the post-DLI evidence showed he suffered from a disability before the DLI but there was a lack of medical evidence created before his DLI. 699 F.3d at 340, 342.

But here, the ALJ cited multiple sources of objective medical evidence prior to the DLI to support his conclusion that Joy's subjective allegations were not fully consistent with the medical record. R. 22–28. And another court in this district has previously distinguished a claimant's situation from that of *Bird* for similar reasons, explaining: "unlike in *Bird*, there is a great deal of medical evidence from the relevant period, cited and summarized by the ALJ, indicating that [claimant's] limitations caused only moderate limitations in her ability to function." *Lisa G. v. Kijakazi*, No. 7:20-CV-691, 2022 WL 868525, at *8 (W.D. Va. Mar. 22, 2022) (citing *Engle v. Berryhill*, No. 1:16-CV-398, 2017 WL 5492193, at *2 (W.D.N.C. Oct. 6,

2017)). Thus, "[t]he existence of the medical evidence from the relevant period undermines [Joy's] argument that Dr. [Shah's] opinion should be considered." *Id.*

## V. Conclusion

For the foregoing reasons, Plaintiff's objections to the R&R will be overruled and the Court will adopt Judge Ballou's Recommendations in full. The Court will issue an accompanying order.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

ENTERED this 20th day of October, 2022.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE